May it please the court, my name is Kate Hoover. I'm an attorney with the Navajo Nation Department of Justice and I will make the Navajo Nation argument today. It is the practice in Navajo culture. Hold on for one minute. Richard, are you able to hear this? Because we are getting an echo. Yes, Judge, I am hearing an echo. I think if Ms. Hoover turns her off, it may resolve the issue. Okay, we're going to let Ms. Hoover test and then she can start over. All right. Oh, that works much better. So I'm sorry. Again, may it please the court, my name is Kate Hoover. I'm an attorney with the Navajo Nation Department of Justice and I will make the nation's argument today. Practice in Navajo culture when you introduce yourself to introduce yourself by your clan so that the people who are brought together know who you are in relation to them. So consistent with that practice, which means that I am born for my mother's people who are of European descent and I'm born to my people. Thank you, Judge Gould and Judge Burzon and Judge Lee accepting this comeback case and we welcome Judge Lee to the panel. I'd like to reserve five minutes of my time for rebuttal. As you noted, Judge Gould, this case presents a difficult issue and one of great importance to the Navajo Nation and I would say to Indian country as a whole, which is why we were grateful to have the amicus brief filed by the National Congress of American Indians Fund, filed by the Native American Rights Fund on their behalf, and a brief filed by law professors who are experts in Indian law and water law. As we wrote in our papers, from the nation's perspective, this case and this complaint as it now stands, with the one remaining breach of trust claim, is founded on the Indian trust doctrine. The nation entered into two separate treaties with the United States, the first in 1849, guaranteeing the protection of the United States over the Navajo people when it acquired sovereignty over Arizona and New Mexico, now Arizona and New Mexico, in 1849 as well. And then it promised to set aside a reservation for the Navajo people. In 1868, the United States took the first step of honoring that promise to set aside a reservation for the Navajo people by establishing a relatively small reservation in contrast to the aboriginal territory of the Navajo people. However, since that time, through additional acts of Congress and executive orders, the Navajo reservation has been expanded to reach the Colorado River, and it is our position that the promises in the nation's treaties extend to the entire reservation as it was extended. And the government has failed to live up to its treaty obligations, and this action seeks to compel them to do so. I'm not going to go through the history of this case, which is long, both in legal... It's not a lawsuit on the treaty as such, right? Excuse me? It's a lawsuit on the treaty, as I understand it. That's correct. And the trust obligations that are expressed in the treaty, I'm sorry. All right. All right, go ahead. Okay. So the nation's primary complaint is that its people desperately need water. And today, 30% of the population within the lower Colorado River basin are estimated to haul water. They do not have running water in their homes. They do not have full plumbing facilities in their homes. And so, especially in light of the COVID-19 pandemic, they are not able to do the simple things that the CDC is... I'll cut through a little bit. You have lots of equities on your side. Okay. The problem is that the case law as to suing on the fiduciary or trust responsibility has become perhaps increasingly non-accessible. So it seems to me that plunging into that case law is where it really is. Great. Okay. So I'll skip over the Winter's Doctrine and reservation and protection. Well, the Winter's Doctrine, I mean, it's obviously relevant because as I understand the case law, although you resist this, you need some specific standard and a treaty might do. So it's not irrelevant. I mean, I don't know what it is, but it's of importance. But still, I mean, my issue is that the, well, we spend a lot of time and growth thinking what's wrong with the Supreme Court cases. Are you a real problem? Well, okay. We can cut to the decision in the Hickory Apache Nation versus the United States case. We take issue with that case and rely, admittedly, significantly on the dissent of Justice Sotomayor. But that case involved a very narrow issue about the extension of a privilege, an exception to the attorney-client privilege that the United States asserted did not apply to it. And the tribe asserted that it was entitled to this exception for communications that affected the trust. Ms. Hoover, if the judge will, if I may. First of all, I wanted to make sure you understood that although your clock now says 1411, that you were going to reserve, said you wanted to reserve five minutes for rebuttal, I decided to give you the extra five minutes. So apart from your regular time. So you go ahead and you can use all your time on the clock on your initial order. The second thing is that I'm speaking just as one judge, but apart from cutting to the chase on what you think is the key controlling precedent here, like I would like to hear some general comment about the winter doctrine and, you know, why the reservation persons living need water. And starting at the beginning, that would help me. I'm happy to do that, your honor. So the winter's doctrine, the winter's case was actually decided by this court first in 1906. And it found that when the United States set aside lands for an Indian tribe, it must have intended to include, and the tribe must have intended to receive water to make that reservation a viable permanent homeland. So even though the treaty that was at issue there for the Fort Belknap reservation did not include any language about water, this court, and then it was affirmed by the U.S. Supreme Court in 1908, held that even though there was no reference to water, that there must have been an understanding between the parties that water would be accessible to the people because otherwise, particularly in the southwest, the lands would be valueless. And that has been upheld through the years by the court in Arizona versus the Supreme Court in Arizona versus California and other cases. So what you have there is an implied right. The winter's doctrine implies a right to water in a treaty with a tribe even if there's no reference to it. Then subsequent decisions of this court and other circuits such as in Parabano versus Babbitt, which we cite, the court recognized that an implied right also has an accompanying implied duty to protect that right. Because if you didn't have the duty for protection, the right would again be valueless. So it is our position that although the treaties, specifically the 1868 treaty, because it's the one that set aside a reservation, does not provide a right to hunt or fish, there is actually a hunting provision, but it's not reserving water for fishing or for culinary uses. The winter's doctrine says that there is an implied right and the cases in the circuits, including this circuit, say there is an implied duty. And we are seeking to enforce that implied right and that implied duty against the United States because the nation, despite developments throughout the state of Arizona, lacks the kinds of water supplies and amenities that other people in Arizona take for granted. And the reason for that is neglect. I mean, that's the bottom line. The United States, when it chooses to, can move mountains and literally does. And for example, we gave as a contrast to Central Arizona project, which delivers water to the city of Phoenix and overcomes the same sorts of hurdles that Mr. Schmupzer raised in his brief about raising water out of the Colorado River where the nation is located, which is a deep canyon, and bringing it to the surface. Those kinds of technical challenges can be met if there's enough money and if there's enough political will to make it happen. And that hasn't happened here. So we assert that we have both an implied right and an implied, and there's an implied duty on the United States to protect that right to avoid. How many people live on the reservation? Approximately 173,000 live on the reservation and approximately that number of Navajo enrolled members live off the reservation. About as many office live on. Does the adequacy of the water supply affect their health and safety? Absolutely. Absolutely. And that's what I was saying about COVID-19, which just has really brought the situation to the forefront of the media in this country and abroad. There is well-documented evidence that the lack of adequate water supplies, when people haul water in unsanitary containers, when they have to look to livestock watering points to supply their water needs, when they only have five to nine gallons per household per day to use, results in numerous health effects, negative health effects. And during the pandemic, as I said, just washing your hands is something you have to prioritize over having water to drink and cook with and potentially to feed your animals or to water your animals. And I think we grasp our reply that the Navajo Nation had the highest rate of infection per capita in the United States for a period of time. I've not gone back to see if that is still the case because I know we have resurgences around the country, but it was more than New York. It was more than New Jersey. It was more than the hotspots around the country. And that's directly attributable to the lack of living conditions on the reservation, where you have multi-generational households living together, where you have exposure from children to grandparents, and that sort of thing happens more often. But yes, it is a significant hindrance to the health and welfare of the Navajo people to not have adequate water. Thank you, Counsel. So moving on. Can I ask you a jurisdictional question? Yes, sir. The Article 9 of the U.S. Department of the Interior that's before it retains jurisdiction. Why wouldn't this fall within that? Because subject matter controversy is pretty broad. I understand that, and that is the argument made by the interveners primarily that, well, they argue either that it's within the retained jurisdiction of the United States or it was decided in Arizona versus California, neither of which do we believe to be true. There was a difference in opinion between what the special master in Arizona versus California held and what the did, which left out the area of the Colorado above Lake Mimid but below Leash Ferry, where the Navajo Nation's rights, that is where the nation is pertinent to the Colorado in the lower base. And so there was no adjudication of the nation's rights because the special master had made a particular decision and the Supreme Court rejected it. So we agree that if we were to bring an action to quantify the nation's water rights, that that action would properly be brought in the United States Supreme Court. We would likely need the cooperation of the United States government to do that, and we have never been able to secure that support to bring an action to finally quantify the nation's rights to the mainstream of the Colorado River. And it was the Navajo Nation apart from a quantified water right, and that is what we are asserting today, is to have the Department of the Interior and the Secretary to carry out the responsibilities of the government to assess the nation's need for water and make a plan to develop those needs, and also that the Secretary in his capacity as the manager of the Colorado River, which is a unique feature of the lower basin Colorado River, that he has, you know, maybe in the terms of Nevada, he wears two hats. He has both obligations to manage the river, but he also has the ongoing trust responsibility to Indian tribes, and he can't allow other interests to dictate his decisions if it works to the detriment of Indian tribes to whom the United States owes the trust responsibility. I don't know if that fully answered your question, but this is not a case about quantification of water rights, and that's the primary reason we say it does not fall within the Supreme Court's retained jurisdiction. Could you articulate your best articulation of how the winter lockdown and the duty of the five products meet whatever standards of particularity the Supreme Court seems to be on? Let's leave the Ninth Circuit case because I understand, and I'm happy with them, and I understand why, and that you're proposing to read the Supreme Court cases, they deal with insufficiently specific jurisdictions. Well, I guess the answer to that is if you're going to imply a right to use water, and that's the way we construe the right, it's a right to use water. It's not a right to a quantification of water. It's not a right to, you know, have a right recognized in the system of prior appropriation by the state. It's a right to access to water, and if the court is going to imply that kind of right and the duty on the part of the United States to protect that right, and I should mention as well, in addition to the water, I mean, the water is a component of the Navajo reservation, so it affects the needs of the lands of the reservation to make them productive, and that was the promise of the treaty was to set land for a permanent homeland for the Navajo people, and obviously there's not a specific right that talks about the extent of the water that is going to be used by the Navajo Nation, but we think that the standard is it's enough water to make for a permanent homeland, which was the, which is provided for in the treaty, and I think that's sufficient, I mean, particularity when you have an implied right is kind of a difficult concept, but I think when you tie that implied right to the purpose of the reservation, which is clearly set out to establish a permanent homeland for a people, it has to be and that's the standard that's used largely today to quantify a water right, is the amount of water needed for a permanent homeland, so that is the kind of particularity we believe that is present in the treaties and is sufficient. But in the end, you have to be suing directly on the common law judiciary duty, right, because in the Tucker, what we held before was that there is a waiver of sovereignty, but there's no cause of action under the ADA. In the Tucker Act cases, there's a cause of action under the Tucker Act if there's a statutory book, but you, here, you have to sue directly on the common law judiciary duty because there is nothing else, is that accurate? That's correct. I mean, we are also suing, I mean, you can look at it, that is what we are doing. We are also suing for breach of those treaties under 1331 and 1362. Under the federal, the court's federal question. Well, you have jurisdiction under 1331, but the cause of action is the common law cause of action on the judiciary duty. That's correct. Which cases proceed that way? What cases do you have that proceeded that way? It is my recollection that the, I'm trying to think of a case that was actually brought as a common law breach of trust, and there aren't a lot of them. I cited one in our papers that was a recent District of South Dakota case that was a common law breach of treaty case. Well, breach of, I mean, one of my questions is why isn't this a breach of treaty case? You said it wasn't, it was a breach of a judiciary duty. It's both. Well, if it was a breach of treaty case, you know, it would be a contract-like case and you might have less problems, but it isn't that. Why? I don't know. Okay. I don't mean to say that it is not both. When we filed our amended, our first proposed amended, third amended claim, a complaint, we set out a separate claim for breach of treaty. The District Court was not happy with that, nor was the United States, and so when we attempted the second time to amend our statement, our complaint, we dropped that second cause of action. We think it is sufficiently fled in our original complaint to encompass an action under the treaty itself. We could certainly say even under a treaty enforcement action that it meets the requirements of the sort of Mitchell cases, Hickorya, and Gros Ventre, but so we have a claim either way, whether you want to characterize it as a common law fiduciary duty claim for the United States. Okay. Council, I think you're over your time. Initially allocated if I'm reading the clock right, but we were going to give you another five minutes rebuttal, and our clock will be set for that. Now we'll proceed. I lost one of my colleagues has a question for you right now. We'll proceed to the argument by the appellees, and I wanted to know if Mr. Smeltzer and Ms. McGuire, if you had agreed which of you was going to speak first. Yes, Your Honor, we agreed that I would go first. Okay, then please proceed. Thank you, Your Honor. May it please the court. I am John Smeltzer for the Department of the Interior. Your Honors, the Navajo Nation's breach of trust claim was properly dismissed because the nation failed to identify any treaty statute or regulation that imposes an treaty by implication under the Winter Doctrine and follows both the substantive obligation and the duty obligation. Right. Well, let me just first say there are two parts to our argument. First, what is the standard? Does the Navajo Nation need to assert with particularity a treaty clause, a statute, something that imposes a duty as there's, Your Honor's question, does the treaty in this case, the 1868 treaty, impose these particular duties that the nation would like to compel the United States to do, that is, the Interior officials to determine the nation's water needs from a specific segment of the Colorado River Main Standard? I noticed that you did not argue either issue, title, or lack of jurisdiction. Is that because you're the meritorious argument? I'm sorry. Your Honor, I just lost touch for a second. Can everybody else hear me? We can hear you now. You are frozen for a time. Glocka, add one minute to the clock. Go ahead. What I was asking was, your brief and your argument, as far as I can see, are not embracing Arizona's jurisdictional or race judicata argument. Am I right about that? That is correct. And we don't think the court... You think that there is not race judicata and the race jurisdiction? We don't take that position. We don't think the court needs to go there. We think... Well, we have to go there. If it's a jurisdictional question, we don't have jurisdiction. We have to go there. Right. Well, and that's the point I was just about to make. It's a jurisdictional... It's not a conventional jurisdictional argument. As I understand it, the interveners are not arguing that there's a lack of subject matter jurisdiction over breach of press claims, generally, or lack of standing. What they are relying on is the doctrine of prior exclusive jurisdiction, which is the doctrine of comity. What they're essentially saying, as I understand it, is that the district court could not essentially adjudicate this case and provide any affirmative relief as requested without interfering with adjudications that ought to occur in the Supreme Court. We submit that unpacking that would be more difficult than just simply starting with the breach of trust claim and determining that there is no breach of trust claim here because the nation has not met the standards that's required to plead a breach of trust claim, which would show a specific source, a specific obligation in a statute, a treaty, or a regulation. Why doesn't Winter control in saying that there's an implied obligation in the treaty? Right, because what Winter's does is it establishes the scope of the reservation. What it says is when the United States, either by a treaty, and in this case, we don't, as we argue in our brief, it's not really the treaty that deals with the water rights next to Colorado River. It is, as Ms. Hoover noted, an executive order. But regardless, they don't point to any specific treaty language. They simply point to that it's Navajo Nation. It simply points to the reservation of land for permanent homeland, which implies then a particular water right. And so the Winter's doctrine goes to this bill. Your whole problem stands on the fact that this is an implied understanding of the agreement rather than in words of the treaty rather than in the words of the treaty. I know, Your Honor. What we're saying is what's implied under the Winter's doctrine is what is the property right. It's a property that's held in trust by the United States for the tribe or for the Navajo Nation here to use in its sovereign capacity. And so what we're saying is beyond that, it doesn't impose an obligation. What the government does is hold that land for the Navajo Nation to use in its sovereign capacity, for it to improve the land, for it to use the water. It does not impose a specific obligation on the United States to improve the land or to develop the water rights. It's what the courts have called essentially a bear tribe. It's a trust that has legal significance, great legal significance in terms of alienation of land. The land can't be alienated with respect to water rights. Water rights cannot be lost for non-use. So there's legal significance to that trust designation. But the trust designation... Why, for example, if that's the case, was the United States representing the water rights interests of the tribes in the Arizona litigation and, for example, opposing intervention by Navajo? You're speaking of the California-Arizona case? Arizona versus California litigation, another litigation. I mean, the United States routinely undertakes to litigate the water rights of the Navajo and their other tribes. And their big argument here is that they didn't do it for them, but they could have done it for them. And presumably that's because they have a trust interest in it. Well, Your Honor, the United States is working with the Navajo tribe right now. Well, that's conceptual. Conceptually. You're saying that they don't have the duty. So when they do this, they're just volunteers? In the context of a McCarran Amendment to general stream adjudication, the United States is compelled to be part of the adjudication and to assert rights on behalf of the United States, not only tribes, but also its own rights. There is no allegation in this case that the United States has breached any obligation with respect to general stream adjudication. With respect to general stream adjudications that are occurring on the Little Colorado River and the San Juan River and that are going to control the vast majority of the water rights of the nation. As we described in the brief, for context, the Navajo Nation is the size of West Virginia. The entire northern border of the Navajo Reservation is essentially the San Juan River. The southern border tracks the Little Colorado River. Those rivers are very important for Navajo water rights. The United States is in court right now in Arizona adjudicating the water rights of the Little Colorado River. You're telling me that there is a specific obligation in a statute that they represent the Navajo with regard to those water rights, but not these water rights? No, your honor. I'm not saying that at all. There is no specific obligation in those contexts. What I'm trying to give the court is a broader sense of what was going on with respect to the adjudication of the Federal Reserve water rights of the Navajo. With respect to Arizona... Just for a minute, maybe it's a stupid question, but listen. My question is, if the United States does not have any trust obligation with regard to establishing the water rights of the Navajo, then why are they, all the other tribes, then why do they spend a lot of time litigating in the name of the United States on behalf of the tribes for water rights? Your honor, the United States has the authority and it has a trust duty in a general sense to the tribes. It's fulfilling what it believes to be its solemn duty with respect to the tribes to do its best to assist tribes. It's a different question as to whether the United States can be compelled to litigate in a particular way or can be compelled to build a particular project. What this case is about is the Navajo being unsatisfied with the way the United States has litigated the reserve rights of the nation and being unsatisfied with the progress of development of water resources on the Navajo Nation. What we cannot be sued in a breach of trust claim for failure to build a particular project or failure to litigate in a particular way. The case law is clear on that. The argument is that there is a trust obligation, but you can't sue on it. In other words, it's a cause of action kind of a claim. Is that what you're saying? That there's no provision for this lawsuit, even though there is a trust obligation? I want to be careful. To the extent I say there is a trust obligation to it is not what I mean to say is the department has put a lot of effort and the United States has put a lot of effort into assisting tribes and litigating the rights for them. The question of whether the United States has an obligation to do that is a distinct question. The courts have said with respect to the general trust status between the United States and tribes, the trust obligation, a duty on the part of the United States, arises only when a statute or a treaty or regulation puts a specific commitment on the United States or federal officials to do a particular thing. With respect to Winter's Rights, again, what the Winter's Rights says is it implies a property right on behalf of the tribes in the water, water that's necessary to fulfill the reservation. It doesn't say, and the United States didn't promise in any treaty or in any executive order with the Navajo that they would build a particular water project or would litigate the nation's water rights in any way. Well, they're not asking, they believe what they're asking on here is not to build a particular water project or to litigate any particular water rights. That's not what it means. Yes, it is, Your Honor. I'm sorry? They are, arguing about how we litigated their reserve rights over the vast majority of the reservation. They are arguing specifically with respect to one segment of the Colorado River Mainstream between Lee Ferry or south of Lee Ferry, downstream from Lee Ferry, one particular segment of the Colorado River Mainstream. If, for example, Your Honor, and it would be great if the United States had the ability and the nation had the ability to adjudicate its federal reserve rights for the entire Navajo reservation at one time, right? That'd be the best way to do it. But because of the limited jurisdiction of the states and the McCarran Amendment and the way it plays out, that wasn't possible. So we've got these adjudications going on in New Mexico and in Arizona and in Utah dealing with the tribe's rights. If all of them were together, the claim that the tribe or the nation is asserting in this case is a claim, is one claim out of, you know, potentially hundreds depending on the granularity that you put into water rights claims. And this particular claim, Your Honor, is simply a claim to the right to divert or use water from a portion of the Colorado River Mainstream, again, that's downstream from Lee Ferry. Lee Ferry has historical significance because it was the last place on the river for hundreds of miles to the south where you could cross and actually access water. Can you tell me where you're getting that location in the complaint or anywhere else? I mean, my understanding, I'm trying to find the plea for release. The plea for release is to determine the extent to which the nation requires water from sources other than a little Colorado River, to develop a plan to secure the needed water, and to use their authority, including the management of the Colorado River, in a manner that does not interfere with the plan to secure the water needed by the Navajo Nation. That's all it says. Your Honor, there is a bunch of earlier statements in the complaint that talk about that this complaint is about the nation's needs in the lower basin. And they particularly complain about Arizona v. California and the way the United States adjudicated that case, which is limited to the lower basin. And the reason they identify the Little Colorado River and not the San Juan River is because the Little Colorado River is part of the lower basin. So what they're talking about is the United States' duty, apparently, to observe rights or use, develop rights out of a particular segment of the Colorado River. And that's what the district court focused on, and the district court referred to it as the lower Colorado River. You know, the Colorado River main stem in the lower basin states, in the lower basin of the river. And again, in that part of the river, Your Honor, the river drops into the Glen Canyon, the Marble Canyon, and the Grand Canyon. That water has not been historically used. There's no allegation by the nation of any historical use of that water. There is no allegation by the nation of any present use of that water. What the nation has said today is that they would need a project like the project that was developed in the Central Arizona project to bring water from that particular segment of the river to the nation, right? And so what the nation is suggesting is that there's some sort of obligation to claim a right to this particular segment. And Your Honor should be aware that this particular segment of the Colorado River isn't even the entirety of the Colorado River adjacent to the Navajo Nation. The Navajo Nation itself has acknowledged in its complaint that there are portions of the main stem of the Colorado River adjacent to the Navajo Nation in the upper base. They don't mention that in their complaint. And they only make a complaint about this particular segment of the river. And again, that would be one claim. If the Federal Reserve were adjudicated together, that would be one claim to water from this system of water, right, that is fully integrated. The Little Colorado River flows to the Colorado River. The San Juan River flows to the Colorado River. Any water that the nation gets from those other sources, surface water anyway, would end up in the Colorado River and maybe the Colorado River upper basin or other places of the river. So it's a common system of water, right? The United States is litigating in other states, in Arizona, in New Mexico, there's a settlement in Utah to provide for the Federal Reserve rights to the nation. And so what the nation is doing is the same thing that was done in the Shoshone-Bannock tribe, a case that we cite in our brief that was decided by the D.C. Circuit. It's complaining about a particular way the nation or the United States is litigating the nation's rights. And the nation is not. I'm going to go back to the complaint. In the breach of judiciary duty, breach of trust cause of action, the federal defendants have breached the duty of protection expressed and undertaken in the treaties between the United States and the Navajo Nation by failing to determine the extent to which the Navajo Nation requires water in addition to that available from the Little Colorado River. And it has to consult, the only way to adequately protect the land is to consult with the Navajo Nation. Determine the amount of water the Navajo Nation requires from sources other than the Little Colorado River and develop a plan to secure that water. Again, that's the alleged breach. And so they are backing out the Little Colorado River, but not anything else, as I understand it. And they're not asking anybody to build any big project at this point just to figure out how to get some water. But they're asserting a water right to a particular segment of the river. Where does it say a particular segment? It says everything but the Little Colorado River, but there are other segments. You're looking at the prayer for relief, Your Honor. No, I wasn't looking at the prayer for relief. I was looking at the breach of trust cause of action. On page 32 of the excerpt of record, volume two, I'm sorry, I've got my notes wrong. Page 45, if you see section heading E, they talk about the United States failure to address the nation's need for water from the main stem of the Colorado River in the lower basin. Right. Page, paragraph 60. One of their background facts, but not going to close the back there and shut their prayer for relief. Does this matter? There is. It matters with respect to the question that Judge Lee asked, for example, with respect to whether Arizona v. California somehow foreclosed this cause of action. Because if the nation is saying in this cause of action that they're talking about the Colorado River main stem in the upper basin, it would be a different case. What it matters, Your Honor, is to show that... First of all, go back over your legal argument on the assumption that they are. The basic legal argument is it doesn't make a difference in terms of where they're asking for water to be determined in the Colorado River main stem, because there's no duty based solely on winters and an executive order for the United States to conduct litigation in any particular way or to assert any particular right. But the other place where it matters, Your Honor, is with respect to this claim for the notion that the United States has breached its duty to protect the water right. And in winters, for example, there were diversions in that case upstream from where the tribe actually used water. So there was a physical diversion away from the tribe. So you might be able to say in that kind of circumstance, well, the United States has done something to take water away from the tribe or is not responding to something that takes water away from the tribe. That's not the case here. They have not alleged that the United States has done anything physically to the river that makes the water less accessible to Canada. They are also not alleging that the United States in any way compromised their legal rights or put their rights in jeopardy. Let me just ask you, just test your premise about the lack of duty. Suppose that the United States filed a lawsuit with regard to the upper Colorado River and then intentionally do it. You could prove that there was all the collusive lawsuits. Would there be some recourse or no obligation? Your Honor, I'm sorry. The audio was cutting out. I did not hear your question. Suppose that the United States spoke on behalf of the Navajo tribe to bring a lawsuit. I don't know what form this would take. Bring a lawsuit with regard to the allocation of the upper Colorado River, the part that was not in the Arizona case, but did so in a collusive way and clearly didn't mean to be representing their interests properly. Is there a lawsuit then? What is your premise about there not being a duty? The argument I think that I'd like the court to consider is there's a difference between malfeasance, which seems to be the example your Honor was providing. You have no duty. They're just volunteers. There's a difference between taking affirmative actions that would alienate property, would sell property that belongs to the tribe to another party, whether it's water rights or land, versus what is being alleged as sort of a basic trust obligation to protect. What I was trying to say with respect to this duty to protect or the alleged duty to protect is that they haven't alleged any facts showing that anything the United States has done has put their water rights in legal jeopardy or has prevented the nation as sovereign from using the rights of the United States through the executive order and the treaty has made available to the nation. The basic obligation, if there is an obligation that can be actionable in the sense of a suit in terms of protecting, is just to make sure that the resource is there for the tribe as sovereign, that the nation is sovereign to utilize itself. If there were to be a further duty, it would be spelled out in the treaty. The United States would say, and we agree to build this project or to improve the lands in this way. If you look at the original 1868 treaty, there are those kinds of obligations in there that specifically talk about building projects and things the United States would do. Here, all you're talking about is the United States setting aside land and that reservation of land also reserves a water right. That's implied and it's fine. We don't dispute any of that. We're in court in the Little Colorado River adjudication arguing for the water rights that were set aside by the executive order. We're just saying that- You're just doing it because you feel like it. You don't have any fiduciary obligation to do it. That's what you're saying. There's no fiduciary common law trust type obligation to do it. Well, with respect to the... I am saying that, but also it's different in the context of the general stream adjudications where if the United States doesn't show up and assert the right, your honor, the right could possibly be forfeited. If we don't show up in the Little Colorado River adjudication or we don't show up in adjudications in New Mexico or Utah and the tribe or the nation is unable to handle its own claims, then those rights potentially could be forfeited. The nation has alleged nothing in this case that suggests any legal jeopardy to their rights. Again, they suggested nothing or alleged nothing in this case that alleges that this person hasn't done anything physically to the river to prevent them from utilizing them. Well, they're saying essentially that, and I don't understand this part very well, but that the United States with another hat is in control of the... Underneath the Arizona... Of the making water contracts and conveying water from the Boulder Dam and the Boulder Collective Dam Act, and so the United States is in control of who gets that water. I'm doing the allocation among the states, but given the allocation among the states, who is actually getting the water? I think that's what they're saying. I'm not sure. But even remember, with respect to the Boulder Canyon Project Act, that authorized projects that are all downstream from the reservation in an area where the water could be accessed and made available to other tribes and to other persons in Arizona through the Central Arizona Project. There's no way any of that water can be delivered to the Navajo reservation. The statutes that govern the Central Arizona Project and the Boulder Canyon Project Act only provide discretion on behalf of the Department of Interior to potentially contract with the Navajo, even though that water can't be delivered physically to the nation, given the proximity of where the nation is and where the project works that were authorized by Congress are. What the nation, again, is saying, well, you didn't build us a project. That's what they're saying, because the water that's delivered down through the Central Arizona Project is not available and could not be delivered, and the delivery that the government is making is not preventing the nation from accessing water in the area of the main stem where they say they have a right. In fact, the United States has made some of the Central Arizona Project water through the Arizona Water Settlement Act available to the nation for a potential settlement, but those are all discretionary authorities under those statutes. Mr. Schmelzer, Judge Gould, I apologize for interrupting you, but I want to interject. You're more than five minutes over your already extended five minutes time, so I know you've been responding to Judge Brisson, and I'm going to let further questions proceed. If any members... Oh, that's fine, and I think I've exhausted my ability to understand. Thank you for the court's indulgence, Your Honor. We ask the court to affirm on the basis that there is no breach of trust claim in this. Thank you, Mr. Schmelzer. Judge Lee, do you have any other questions? I have no questions. So now, then we'll thank Mr. Schmelzer. It's also three hours later in D.C., right? Yes, Your Honor. We don't know how long this will go on, but we'll try to let you finish before midnight here. Proceed to Ms. McGuire. Good afternoon, Your Honors. My name is Rita McGuire. I represent the state of Arizona, and today I also speak on behalf of the intervener athletes in this case, which includes the state of Nevada, Metropolitan Water District of Southern California, Coachella Valley Irrigation District, and Imperial Irrigation District. I want to focus my debate on the court's lack of jurisdiction over the question being raised by the Navajo in their brief. As you know, the district court denied Lee to amend their complaint to the Navajo and dismissed their action. Judge Snow did it on two grounds. First, lack of subject matter jurisdiction, and second, futility. These arguments were made exclusively by the interveners since the act of litigation began in 2013. We argue that the Navajo claim does fall squarely within the Supreme Court's retained and exclusive final consolidated decree issued in 2006. Article 9 of that consolidated decree states the court retains jurisdiction of this suit for the purpose of any order, direction, or modification of the decree, or any supplementary decree that may arise at any time and be deemed proper in relation to the subject matter in controversy. Thus, the 2006 consolidated decree fully and finally adjudicated the water rights in the lower basin of the Colorado River below Lee Ferry, which is where the Navajo bring their claim. The U.S. did represent the Navajo in the original adjudication of the Colorado River in the lower basin. And the complaint now is between, is against the United States. It's not the United States or the tribe, the nation, bringing a suit against the other parties in the original litigation. It's just a breach of judiciary duty case between those two people. So how could it have been determined in the Arizona case where they were not on opposite sides? They were reportedly on the same side. And it wasn't about whether the United States was adequately representing the tribe. That's aside from the fact that they're not asking directly for any change in the allocation among the states of the water. Your Honor, what the interveners argue is that the U.S. Supreme Court has made it absolutely clear that they have retained jurisdiction over the adjudication of any water rights in the Colorado River in the lower basin. So effectively what the Navajo are asking in their complaint is that water be reserved for their reservation, which would directly conflict with Article 9 of the Supreme Court's Consolidated Decree. I thought in the more recent case the court read this provision as essentially in a facility to amend a preliminary injunction or an injunction. It's not about, it was simply a softening of res judicata with regard to what was decided. I can tell you that in the 1983 decision by the Supreme Court in Arizona versus California, they specifically spoke to the issue of res judicata and in fact declined to award reserved rights to omitted land that had originally been brought before the court in the 1963 Act. They did so for two reasons. One, for a secure water right and two, the ability to protect from the diminishment of existing water rights. As the state engineer said in the case of, and I'm going to not be able to remember the exact site, but he basically made the point that in water cases, awarding water rights to one party necessarily diminishes the water right to another party. And that effectively would occur here where the United States Supreme Court has fully adjudicated the water supplies of the lower basin. So to the extent that another court would interject itself and award rights to the Colorado River outside of that adjudicatory process, that would directly interfere with the rights of existing right holders in the lower basin. Mr. McGuire, this is Judge Gould with a question for you. Isn't there a difference between a claim for breach of fiduciary duty by the tribe against the federal government and a claim for moral saying we want an award of moral water? Because, for example, if you're relying on Article 11 of the prior decree in the Arizona case, if we, and I'm not saying we're going to do this, but if our panel were to hold that the U.S. Department of Justice had breached some fiduciary obligation to proceed properly to gain water rights for the Navajo Nation, couldn't the U.S. Department of Justice then go file a pleading in the U.S. Supreme Court trying to reopen what was done previously there under Article 11? They potentially could. They have not done so to date. If they could, then why should the tribe's claim for breach of fiduciary duty be tossed out now on jurisdiction because of Article 11? You would argue that you can't get to the breach of fiduciary duty in this case without violating the Supreme Court's jurisdiction in Arizona versus California because the net effect of the request from the tribe is for the secretary to manage the river in a way that takes into consideration the Navajo tribe's rights to that water supply. Management of that river system is the same as allocating water to the Navajo to the exclusion of the existing water right holders without having a quantified judicial recognized right or a congressionally approved settlement for rights to the Colorado River. Okay. Thank you, Counselor. My question took you through more of your five minutes than you anticipated. I'm going to ask Veronica to please just add another minute to that. It requires time, which is now, was a couple of minutes over. So you're going to end up getting eight minutes. Please. Thank you. Counting down. All right. There's been a lot of discussion about the Winters case and obviously that goes to the breach of trust argument. But I want to touch on the facts in Winters because they're significantly different than the facts in this case. In the Winters case, there was an 1888 agreement between the federal government and the Fort Belknap tribe to provide no river water to the reservation. Now, that agreement subsequently was voided by the creation of the state of Washington. But nevertheless, it was clear evidence of the federal government's intent to reserve water for the reservation. And unlike here, where there's no mention anywhere in any treaty, any executive order, any of the doctrines, the laws that we call the law of the river governing the management of the Colorado River system, is there a statement saying that the Navajo are entitled to water from the lower basin of the Colorado River? But in the Winters case, the Milk River was clearly the source of the water that the tribe sought. There was an agreement that recognized that. And there was even a lower court quantification of the rights of the Milk River as an interlocutory order in that decision. So it's much more specific. So, here's my question. Are the Navajo entitled under the Winters doctrine to any water from somewhere to the reservation level? Absolutely, Your Honor. As Mr. Smeltzer indicated, there are three different state adjudications. Well, there are adjudications, but so far, they don't have any water. They do have water. I don't think they have water from any of those places. Water from the San Juan River, and from the Little Colorado, when that adjudication is complete. Well, it's not. And so far, it's been represented that we're now 150 years or so after the treaty that took basically a whole lot of land from them and gave them this reservation and said it was going to protect them. And according to Winters, that included providing the land and the water necessary to make the land livable. And it hasn't happened. Your Honor, we would point to the existing adjudications. In fact, the one that's ongoing here in Arizona is set to go to trial in 2022. That's a ways off, but these adjudications are very complicated. What are people supposed to drink between now and 2022? They have groundwater wells on the reservation, and they have other sources of water. Capturing surface water flows on the reservation, stock ponds, et cetera, may not be ideal, but there are water resources on the reservation. OK, thank you, Miss McGuire. Now, we've gone right over your extra five minutes. Thank you, Your Honor. Thank you. And of course, I now return to the to the appellant. But before I do that, I'm just going to tell all the parties that the panel could decide to ask for a supplemental briefing on any issue to let people speak further. But apart from that, we've got to somehow complete this today. So return to appellant's argument. Judge Gould, there were a number of issues raised that are sort of confusing. When Mr. Smeltzer was talking about that the nation has narrowed its request, and this seems to trouble the district court as well, to the lower Colorado River. The lower Colorado River is access to the mainstream of the Colorado that was apportioned between the states. And it is a significant source of water. And unlike the little Colorado River that no longer runs regularly and actually is dependent largely on snowmelt and other flood events. And yes, there's groundwater under the Navajo Nation, but not in the area of the reservation within the lower basin of the Colorado River. Mr. Smeltzer did note that because of the McCarran Amendment and the recognition by the Supreme Court that the rights of tribes to water could be adjudicated in state courts because it had waived the sovereign immunity of the United States. In the nation's case, we intervene in every one of those cases to protect our own interest. This case is not about the representation of the nation's interest in those other proceedings. But I could bend your ear for a long time about concerns we have about conflicts of interest between the Navajo Nation and the Hopi Tribe over the same resources. And take the position that it will assert the maximum credible claim for each, but has not done so in accord with our view of what a maximum credible claim is. So we do take issue, but that's not what this case is about. This case is about the lower basin of the Colorado River. The San Juan River in Utah that also bounds the Navajo Nation is part of the Colorado system. And yes, we have a settlement pending before Congress that would allocate rights or award – recognize the nation's rights to that river. We do not have any proceeding. And as Judge Bergeson asked, I believe the way to remedy that legally would be to return to the Supreme Court. We need the assistance of the United States to do that. And the United States has refused to assist the nation in doing that. The United States is a reluctant partner, I would say, in much of the litigation to resolve the nation's water rights. It was drug into court by the McCarran Amendment. It is not always helpful. We try and work cooperatively with the United States. But moving on to other things, the most disturbing thing to hear from the United States is this provisions and statutes. And as the courts have recognized previously, if all the obligations that the United States has are reflected in statutes and regulations and even treaties, then it – there is no basis – I mean, there's no need for a just responsibility. But that is not what the relationship between the tribe and the nation – the United States is about. And from the earliest – from before this country's founding, there was a recognition of the need to work with tribes to recognize their sovereignty within the United States. MS. HARDINGTON. The problem is that if we read the initial cases and the Navajo case in the Supreme Court and the Nicarilla case in the Supreme Court, what you're saying makes a lot of sense, but it doesn't seem to be what the Supreme Court is saying. MS. HARDINGTON. Well, but again, Judge Berzon, those are Tucker Act cases where they are – MS. HARDINGTON. Tell me why that matters. It seems to me it doesn't make a – because –  HARDINGTON. Well, there's statutory requirements. MS. HARDINGTON. Just a minute. In those cases, there is a Tucker Act cause of action, and what you need is a basis for it. Now, here, there is no statute that gives a cause of action, and you have to be sued directly on the common law breach of duty. I don't know why the hell you're better for this. MS. HARDINGTON. I'm sorry, I didn't hear your last – MS.  Why does that put you in a better position? The statements don't say this is because of the Tucker Act, and they're very broad. They're out of context in some cases. You know, Hickorilla seems to be taking a little case and making it into a big case, which is essentially what the concurrent justice said, but nonetheless, it's all out there, and it doesn't seem to be limited to the Tucker Act, and as I say, the Tucker Act – this is what's really troubling me. The Tucker Act seems like it should be an easier case because there is a cause of action under the Tucker Act. Here, you're trying to go directly on the common law cause of action because you don't have anything else. MS. HARDINGTON. That's correct, but I guess our point is there's nothing about the statutory requirement in the Tucker Act to bring claim that ought to be extended to a common law breach of trust action, and that's what the courts have done and the Supreme Court has done, and it has misquoted – you know, it's – I'm sorry. The legal case – MS. HARDINGTON. Right now, we can't go against the Supreme Court. We can't go against the gross bench case in our own case as a three-judge panel, so what we need is our best argument under those cases.  HARDINGTON. Our best argument under those cases is, in fact, the nation has identified its treaty and the promises in its treaty, the implied rights in its treaty, and that, together with the law of the river, the regulations that we cited that have been incorporated in decisional documents by the United States and the United States' own position of trust responsibility, are grounds for suit to enforce the nation – to provide the nation with water for its purposes. MS. HARDINGTON. But why is the United States controlling the water supply in this area under the Boulder Dam Act or otherwise? It's important to know, too. MS. HARDINGTON. Because the United States is making decisions about the management of the river that frequently affect the ability of the Navajo Nation to secure water for its own needs. Now, it is true that the United States has stood up in court and said, well, should the nation be awarded water rights, they would trump these other uses in the basin. But we've had this discussion before in the context of reliance. It's very difficult to pull water away from the cities in Arizona to meet the nation's needs. So we are concerned about the management decisions that the Secretary makes, which are not – where he does not consider the needs of the Navajo Nation, which is his obligation in carrying out the trust responsibility. He has two duties. The cases such as Supron have said you can't elevate the interests of non-Indians over the interests of the tribes if you have an obligation for the tribes, which the Secretary does here. So creating – I mean, one example is – and we cite it in our papers – we had, I believe, there was a plan to set aside water from the Colorado River to meet the needs of people who have – non-Indians who have been pumping from the alluvium, that is, the water flowing under the surface. So they had wells to withdraw water, but it was withdrawing water from the Colorado River. They were going to set aside about 10,000 acre-feet so that – to meet the needs of these non-Indians who had mistakenly thought they were pumping groundwater and they were pumping surface water. But they don't show the same sort of empathy, sympathy, concern for the needs of the Navajo Nation and its people to meet their needs. And the existing water supplies on the Navajo Nation first are constrained by the parts of the reservations where they have been recognized because of the different adjudications which limit where you can use your water, generally speaking. And so the fact that we have an award in New Mexico doesn't mean that we can use that water in Arizona. To correct one thing that Mr. Schmeltzer said, the 6,411 acre-feet awarded – or recognized in OASA for the Navajo Nation is to be delivered to the Navajo Nation through Wendorock, its capital, and surrounding communities through the New Mexico – sorry, the Navajo Gallup Water Supply Project, which is being built as part of the nation's New Mexico settlement because it is impractical to get water to those areas in Arizona any other way. But that was what that water was for. It would take much – a much greater amount of water to serve the area of the reservation in the lower basin on which this claim is set.  SCHMELTZER I think you are fairly over your extended time now, so I hope we can get this matter fairly resolved without everybody here rushing out to Arizona with a bucket of water to help us. It's a very complicated case. As I said earlier, if other panel members would like more briefing, we'll do that. But otherwise, I want to thank all the parties. I thank Mr. Schmeltzer in particular for working with us so late on his closed time. That is done. And Ms. McGuire, she's in our time zone, but she still gets commended. And Ms. Hooper also gets our commendations. You've all really made excellent arguments in the best traditions of the bar. She's given us a lot of help, and we will take it from here. The Navajo Nation case now shall be submitted unless one of my colleagues wants to interpose a question. Hearing none, we will now submit this case with our thanks.
judges: Gould, Berzon, Lee